

FILED

2008 Jan-22  AM 10:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| LESLIE BARBER, | ] | |
| JACQUELINE BRANDON, | ] | |
| SANDRA FAYE CUNNINGHAM, | ] | |
| JOHN GREER, CURTIS KING JR., | ] | |
| TONEY McCLOUD, | ] | |
| SHONDA PATRICK MAZIQUE, | ] | |
| TAMMIE ORR, | ] | |
| SANDRA OVERSTREET, | ] | |
| TERESA ROBERTSON, | ] | |
| MARQUITA ROBY, KALETTA ROBY, | ] | |
| CARLOS SMITH, MARY ADAMS, | ] | |
| TERESA BESTER, SHEILA ELLIOTT, | ] | 7:06-CV-02054-LSC |
| D WAYNE PRUITT, SALLIE SMITH, | ] | |
| and CHARLIE WILSON, | ] | |
| | ] | |
| Plaintiffs, | ] | |
| | ] | |
| vs. | ] | |
| | ] | |
| PECO FOODS, INC., | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration the motion for partial summary

judgment filed by Peco Foods, Inc. ("Defendant"), on September 28, 2007.

Page 1 of  24

(Doc. 67.)

On October 12, 2006, Leslie Barber, Jacqueline Brandon, Sandra Faye Cunningham, John Greer, Curtis King Jr., Toney McCloud, Shonda Patrick Mazique, Tammie Orr, Sandra Overstreet, Teresa Robertson, Marquita Roby, Kaletta Roby, Carlos Smith, Mary Adams, Teresa Bester, Shelia Elliott, D Wayne Pruitt, Sallie Smith, and Charlie Wilson (hereinafter "Plaintiffs") filed the current action on behalf of themselves and other similarly situated current and former employees of Defendant.  Initially, Plaintiffs sought to certify a class of processing employees at five different Peco plants: Tuscaloosa, Alabama; Sebastopol, Mississippi; Brooksville, Mississippi; Bay Springs, Mississippi; and Canton, Mississippi.  On August 22, 2007, the Court denied Plaintiffs' motion to conditionally certify this cause as a collective action after finding that Plaintiffs were not similarly situated to one another or to the prospective opt-in plaintiffs.  Subsequently, on January 2, 2008, the Court allowed all of the potential opt-in plaintiffs to withdraw their consent, leaving only the named Plaintiffs to litigate the claims.  The named Plaintiffs are employed at the Tuscaloosa, Brooksville, and Sebastopol plants only.  Because none of the named Plaintiffs work in Bay Springs or Canton,

these facilities will not be addressed in this Opinion.

The remaining Plaintiffs allege that Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., by intentionally failing to compensate them for all hours worked, and by failing to pay time and a half for all overtime hours worked.[1]  (Doc. 1 ¶ 10.)  They seek unpaid wages; unpaid overtime; liquidated damages; court costs; attorneys' fees; litigation costs/expenses; and appropriate equitable relief.  (Doc. 1 ¶ 1.)

This Court invited the parties to expedite discovery related specifically to the application of 29 U.S.C. § 203(o) and its effect on this case.  Based on the limited nature of the expedited discovery, many of Plaintiffs' claims will not be addressed in this Opinion.  Any claims not specifically resolved herein will remain pending for future resolution consistent with a Scheduling Order that will be entered following the upcoming Scheduling Conference.

---

[1]Specifically, Plaintiffs claim that Defendant, as a matter of course, deducts thirty (30) minutes from each employee's workday for a meal irrespective of the actual time spent on the meal break; that Defendant does not pay overtime wages at one and one-half times the employees' regular hourly rate; and that Defendant does not compensate employees for "the time spent in 'donning' and 'doffing' the protective and sanitary clothing" required while working at chicken processing and production facilities. (Doc. 1 ¶ 5.)  Plaintiffs also allege that Defendant does not compensate employees for the time spent passing through security devices before and after their scheduled shifts. *Id*. at ¶ 12.

In its motion for partial summary judgment, Defendant claims that it is entitled to judgment against Plaintiffs' claims for unpaid wages related to donning and doffing of sanitary garments.  Specifically, Defendant claims that § 203(o) forecloses Plaintiffs' right to compensation for donning, doffing, and related activities because Defendant maintained an established practice for compensating employees for these activities, to which the respective unions have agreed or acquiesced through collective bargaining agreements ("CBAs").  (Doc. 68 at 15.)

Upon careful consideration of the evidence and legal arguments made by the parties, Defendant's motion is due to be **granted in part and denied in part**.

II.    Evidentiary Motions.

As a preliminary matter, the Court will address several evidentiary objections filed by Plaintiffs in this action.  (Doc. 75.)

Plaintiffs have filed objections to portions of the affidavits of Steve Conley, James Strong, Larry Smith, Donald Freeman, and Bruce Johnson.  In their objections, Plaintiffs identify each paragraph number they object to and argue that the testimony is hearsay, vague, general, not reasonably

based on personal knowledge, speculative, improper opinion evidence, and/or inconsistent with other evidence.  For the reasons outlined below, the objections are overruled as to Steve Conley and James Strong, and sustained as to Larry Smith, Donald Freeman, and Bruce Johnson.

A.    Steve Conley.

Plaintiffs object to Steve Conley's affidavit on the grounds that it is not based on personal knowledge and it contains inadmissible hearsay.[2]

Rule 56(e) of the Federal Rules of Civil Procedure and Rule 602 of the Federal Rules of Evidence require affidavits to be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters therein.  *See* Fed. R. Civ. P. 56(e); Fed. R. Evid. 602.  The Court finds that Conley's affidavit meets these requirements.

Conley has been employed as Defendant's Corporate Director of Human Resources since 1992.  (Conley Aff. ¶ 4.)  In that position, he is responsible for labor and employee relations for all of Defendant's plants.

---

[2]Plaintiffs utilize a shotgun approach in making and supporting their objections to the affidavit testimony.  While the Court has not addressed all of Plaintiffs grounds, it has nonetheless considered them and finds them without merit.

*Id.*   Conley stated that based on this position, he is familiar with the timekeeping and payroll practices of Defendant's facilities.  *Id.* at ¶ 5. Moreover, his position also requires that he be familiar with the documents associated with Defendant's negotiation of CBAs.  *Id.*  He claims that he has "been personally involved in all of [the CBA] negotiations since 1992 and [has] been present at the bargaining table for all of the negotiations at that time."  *Id.*   Based on Conley's testimony and the circumstances of his position with Defendant, it is clear that he has personal knowledge of Defendant's policies regarding compensation for donning and doffing and the methods by which Defendant determines how much time it pays its employees.

With regard to Plaintiffs' objection that Conley's affidavit contains inadmissible hearsay, the objection is overruled.

B.    James Strong.

The Court's ruling with regard to Plaintiffs' objections to Strong's affidavit testimony as inadmissible hearsay or lacking personal knowledge, is the same as the Conley affidavit above.  The potential admissibility of evidence at trial was carefully weighed by the Court during the summary

judgment process.  Evidence that could not be reduced to admissible form at trial was rejected by this Court in making its final decision.  *See Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999).

Strong testified that he is employed by Defendant as the Second Processing Superintendent at Defendant's facility in Tuscaloosa, Alabama. (Strong Aff. ¶ 4).  He stated that he has worked in the Tuscaloosa plant for the last 34 years, with the last 20 years spent as the Second Processing Superintendent.  *Id*.  Strong's testimony demonstrates that he is familiar with Defendant's practices and customs with regards to donning and doffing of sanitary clothing.  *Id*. at ¶¶ 5-7.  Through this testimony, Defendant established that Strong has personal knowledge of the subject matter contained in his affidavit.  Furthermore, similar to the objections to Conley's affidavit, Plaintiffs have presented no specific evidence to dispute Strong's knowledge or perception of the events described in his testimony.

C.     Larry Smith, Donald Freeman, and Bruce Johnson.

Lastly, the Court considers Plaintiffs' objections to the affidavits of Larry Smith, Donald Freeman, and Bruce Johnson.  Both Smith and Freeman submitted affidavits concerning employment practices and policies at

Defendant's Bay Springs, Mississippi facility, where they are employed. Johnson's affidavit concerned the Fulton Street facility in Canton, Mississippi.  Because none of the remaining named Plaintiffs are employed at these facilities, Defendant's objections to the Smith, Freeman, and Johnson affidavits are sustained.  For purposes of summary judgment, the Court will not consider these affidavits.

III.   Facts.[3]

Defendant operates poultry processing facilities located in Tuscaloosa, Alabama; Brooksville, Mississippi; Sebastopol, Mississippi; Bay Springs, Mississippi; and Canton, Mississippi.  (Doc. 68 at 2.)  Employees at all of Defendant's facilities, except Sebastopol, are represented by unions and covered by negotiated CBAs.[4]  *Id.*  These CBAs are periodically renegotiated

_____

[3]The facts set out in this opinion are taken from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the non-moving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[4]Because there was not a negotiated CBA covering the Sebastopol facility, § 203(o) analysis does not apply to Plaintiffs working in Sebastopol.  Any claims related to that facility will not be addressed in this Opinion.  The following Plaintiffs work at the Sebastopol plant: John Greer, Shonda P. Mazique, Teresa Robertson, Marquita Roby, and

pursuant to the National Labor Relations Act.  *Id.*

As a condition of employment, Defendant requires Plaintiffs to wear protective and sanitary clothing which is provided by Defendant.  (Doc. 81 at 5.)  This clothing must be put on or "donned" prior to the employee reporting to his or her work station.  *Id.*  At the end of their shift, Plaintiffs are required to take off or "doff" the same protective and sanitary clothing.

A.    Tuscaloosa Plant.

Mary Adams, Teresa Bester, Sheila Elliott, D Wayne Pruitt, Sallie Smith, and Charlie Wilson all worked at the Tuscaloosa facility.  Employees at the Tuscaloosa facility have been represented by the Laborers International Union ("LIUNA") for more than 20 years.  *Id.* at 4.  The CBA for the Tuscaloosa facility has been renegotiated approximately every three years during that time.  *Id.*

In order to demarcate paid time to its employees, the Tuscaloosa plant uses a "control person."  *Id.* at 5.  As a result of this method, Defendant claims that Tuscaloosa employees are generally allowed two to three minutes of paid time at the beginning and end of their shift to don and doff

---

Kaletta Roby.

their sanitary garments.[5]  *Id.*  For meal breaks, a timecard is punched by a bargaining unit member after he or she removes their sanitary clothing prior to the beginning of the break.  (Doc. 68 at 3.)  Then, at the conclusion of the meal break, the timecard is again punched by the designated employee before he or she re-dons any sanitary clothing and returns to work.  *Id.*  At the end of the workday, the employees are clocked out by a shift leader who establishes the "out" punch for his or her department after completing the work and removing any required clothing.[6]  *Id.* at 5, 6, and 8.

B.    Brooksville Plant.

Leslie Barber, Jacqueline Brandon, Sandra F. Cunningham, Curtis King Jr., Torey McCloud, Tammie Orr, Sandra Overstreet, and Carlos Smith all worked at the Brooksville facility.  Employees at the Brooksville facility have

---

[5]While Plaintiff disputes that Defendant's policy provides employees adequate time to don and doff the required sanitary garments, there is no dispute that this "control person" method was practiced at the Tuscaloosa facility.  *See* Doc. 81 at 2.

[6]The practice and custom of using a control person to establish paid time for the department first arose in negotiations for the 1994 through 1997 CBA and was embodied in that agreement.  (Doc. 68 at 5.)  The 1994 through 1997 agreement provided that "the company agrees to designate a production and general employee in each applicable department to punch the line control card after washing down aprons at the end of the shift."  This language has subsequently appeared in every successive bargaining agreement covering the Tuscaloosa employees.

been represented by the United Food and Commercial Workers Union ("UFCW") since 2001. *Id*. at 7. Since that time, three successive CBAs have been negotiated covering that facility. *Id*.

At all relevant times, Defendant has used a control employee to measure compensable time for each department at the Brooksville facility. *Id*. at 8. Specifically, the practice is for an employee from each production department to swipe a timecard at the beginning of the shift, don all necessary protective clothing and report to his workstation. *Id*. The employee then swipes another timecard when ready to begin work. *Id*. This process is reversed at the end of the shift to determine the end of the workday. *Id*. Employees in each department are paid a beginning time which is based upon the initial swipe by the control employee for the department and an ending time which is based upon the final swipe by the control employee after removing all required protective clothing. *Id*. This practice has been in place since 2001. *Id*.

IV.    Summary Judgment Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *U.S. v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986).  However, judges are not "required to submit a question to a jury merely because some evidence has been introduced by a party having the burden of proof, unless the evidence be of such character that it would warrant the jury finding a verdict in favor of that party.  *Id.* at 251 (*quoting Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1872)).  "This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250.

V.   Discussion.

It is clear that the FLSA's core requirement is that employers must pay their employees a wage for all of the "work" that they perform.   *See generally Smith v. Aztec Well Service Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006).   The basic issue addressed in this Opinion is whether Plaintiffs' donning and doffing activities are compensable under the FLSA.   Answering this question, for the most part, entails applying the recent Eleventh Circuit decision in *Anderson v. Cagle's, Inc.*, 488 F.3d 945 (11th Cir. 2007).

As in this case, *Anderson* involved poultry processing employees who sought compensation for donning, doffing and related activities both at the beginning and end of shifts, along with before and after breaks.   The processing employees in *Anderson* alleged that they were required to wear "various articles of protective clothing, including smocks, hair/beard nets, gloves, and hearing protection" and that their employers required employees "to arrive before line time [began] in order to don the clothing and remain after line time [ended] to doff the clothing."  *Id.*   The *Anderson* plaintiffs were also represented by a union, however, prior to the adoption of the CBA, they had previously received no compensation for donning, doffing and related activities.   While they alleged that this practice violated

the FLSA, the Eleventh Circuit held that § 203(o) prevented the processing employees from recovering. *Id*. That is also the fate of Plaintiffs in this case.

A.     Donning and Doffing at the Beginning and End of the Workday.

"In determining . . . the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee." 29 U.S.C. § 203(o). Sub-section 203(o) applies if two conditions are met: (1) the activity at issue constitutes "changing clothes"; and (2) such time was excluded from measured working time by the express terms of or by custom or practice under a bona fide CBA.

1.     Changing Clothes.

Plaintiffs argue that Defendant has not established that the "equipment" required to be worn by Plaintiffs is the same as the "clothes" referenced in § 203(o). *See* Doc. 81 at 29. This argument appears to rest entirely on the theory that the CBAs at issue refer to the items donned and

doffed as "equipment," rather than "clothes."  *Id*.  This argument is in

direct contradiction to the Eleventh Circuit's holding in *Anderson*.  In

*Anderson*, the Eleventh Circuit rejected the contention that the protective

garments which processing employees were required to don and doff were

not "clothes" as that term is used in § 203(o).  *Id*. at 956.  The Court also

rejected the argument that "changing clothes," within the meaning of §

203(o), could "only refer to the specific act of arriving at work in one set of

clothes, removing those clothes, and putting on a different set of clothes."[7]

*Id*.

Through affidavits, Plaintiffs admit that Defendant requires them to

put on aprons, boots, hair nets, sleeves, and rubber gloves.  Additionally,

---

[7]In reaching this conclusion, the Eleventh Circuit specifically rejected the Ninth Circuit's holding in *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003), *aff'd on other grounds*, 546 U.S. 21 (2005).  In *Alvarez*, the Ninth Circuit held that the garments at issue did not constitute "clothes" and the donning/doffing of those garments did not constitute clothes "changing."  *Alvarez*, 339 F.3d at 904-05.  While the Supreme Court affirmed the *Alvarez* decision, its review was limited to the question of "[w]hether walking that occurs between compensable clothes-changing time and the time employees arrive at or depart from their actual work stations constitutes non-compensable 'walking . . . to and from the actual place of performance of the principal activity' within the meaning of Section 4(a)" of the Portal-to-Portal Act of 1947.  Petition for Writ of Certiorari, *Alvarez*, 546 U.S. 21 (No. 03-1238).  The Supreme Court did not address the application of § 203(o), therefore, contrary to Plaintiffs' argument, *Alvarez* is not controlling as to the issue addressed by this motion.  *See generally*, *Alvarez*, 546 U.S.21 (2005).

several Plaintiffs claim that they wear other items such as ear plugs, rain suits, smocks, cotton gloves, goggles, and hand guards.  These items were determined to be "clothing" by the Eleventh Circuit.[8]  *Id.* at 949.  Plaintiffs have failed to differentiate the clothing worn by Plaintiffs from that of the clothing held to fall within § 203(o) by the Eleventh Circuit in *Anderson*.  In fact, Plaintiffs did not even attempt to distinguish the sanitary clothing that Defendant required its processing employees to wear from the clothing that the employees were required to wear in the *Anderson* case.  Instead, Plaintiffs spent the majority of their argument attempting to convince the Court to make a distinction between "clothing" and "gear" as the Ninth Circuit did in *Alvarez*.  Without any factual distinctions, this Court is bound to follow the *Anderson* precedent, thus § 203(o) applies to the clothes changing activities at issue in this case.

        2.    Custom or Practice Under a Bona Fide CBA.

Plaintiffs argue that Defendant's pay policies do not qualify as a custom or practice under a bona fide CBA, as § 203(o) requires.  Specifically,

---

[8]In *Anderson,* the Eleventh Circuit noted that the processing employees were required to wear various articles of protective clothing, including: smocks, hair/beard nets, gloves, and hearing protection.  *Anderson,* 488 F.3d at 949.

Plaintiffs claim that Defendant maintains a policy, which is not being enforced, to pay its employees "for all hours worked."[9]  *See* Doc. 81 at 22-29.  Moreover, Plaintiffs argue that because the negotiated CBAs are silent with regards to donning and doffing compensation (or lack of compensation), Defendant cannot show that it had a policy or custom under § 203(o).[10]  *Id.* at 27.

With regard to the evidence necessary to establish a custom or practice under a bona fide CBA as set forth in § 203(o), the Eleventh Circuit rejected the argument that a custom or practice under § 203(o) cannot arise

---

[9]As an aside, Plaintiffs' council also alleged that because the CBAs contained an entireties clause, which states that there are no unwritten agreements recognized by the parties, Defendant is estopped from claiming that it maintains any practices which are not contained within the CBAs.  Not only does this argument appear to be in direct contradiction to *Anderson*, but Plaintiffs' also failed to cite legal authority of any kind to support an estoppel claim.  This Court will not address this perfunctory and underdeveloped argument.  *See Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

[10]While Plaintiffs claim that donning and doffing were not discussed during the CBA negotiations, Defendant disagrees.  It claims that based on a review of the bargaining notes and various proposals made during that time, that donning and doffing issues were discussed during CBA negotiations.  Rather than making a determination as to the significance of the CBA bargaining notes and proposals, the Court will assume for summary judgment purposes that the CBAs never addressed the compensation policy for donning and doffing at the beginning and end of the workday.  Under *Anderson*, establishing the significance of the bargaining proposals is unnecessary.

"absent some actual negotiation or agreement between the union and employer on that subject." *Anderson,* 488 F.3d at 958.  Assuming that "the CBAs never addressed the compensation policy with respect to clothes changing and that the parties to the relevant CBAs never discussed the policy," the court "nevertheless conclude[d] that the named . . . Plaintiffs' view of the law is incorrect."  *Id.*  The Eleventh Circuit reasoned that "relying again on a common sense understanding of the statute's language, we believe that a policy concerning compensation (or non compensation, as the case may be) for clothes changing, written or unwritten, in force or effect at the time a CBA was executed satisfies § 203(o)'s requirement of a custom or practice under a bona fide CBA."  *Id.* at 958-59 (internal quotation marks omitted).  The Court observed that the "absence of negotiations cannot, in this instance, equate to ignorance of the policy. Rather, it demonstrates acquiescence to it."  *Id.* at 959.  Based on this analysis, the Eleventh Circuit found that the district court had correctly granted the employer's motion for summary judgment and that "§ 203(o) forecloses the . . . Plaintiffs' claim that the FLSA required [the employer] to compensate them for time spent donning/doffing the protective clothing

at issue." *Id*.

Relying on *Anderson*, Plaintiffs' arguments must fail.  The evidence indisputably shows that Defendant maintained a policy for compensating its employees for donning and doffing related activities both at the beginning and end of the workday.  Before the shift begins, an employee from each production department swipes a timecard to begin the shift.  That employee then dons all necessary protective clothing and reports to his workstation. The employee then swipes another timecard when he or she is ready to begin work.  This same process is then reversed at the end of the shift. Employees in each department are paid a beginning time which is based upon the initial swipe by the control employee for the department and an ending time which is based upon the final swipe by the control employee after removing all required protective clothing.

This method of determining paid time was in place prior to the negotiation of the CBAs. As the Eleventh Circuit clearly stated in *Anderson*, the lack of bargaining for a different method of keeping time demonstrates acquiescence to the policy in place prior to the adoption of the CBA.  The fact that Plaintiffs disagree with the adequacy of this policy demonstrates

that the bargaining table, not the courtroom, should have been the appropriate forum for expressing their grievances.  The evidence shows that the Tuscaloosa facility renegotiates its CBA approximately every three years and the Brooksville facility has renegotiated its CBA three times since 2001.  Defendant's policies and practices have persisted throughout the negotiation of the CBAs at both facilities, therefore, they satisfy § 203(o)'s "custom or practice" requirement.

> B.    Donning and Doffing Before and After Breaks.

In reaching its decision in *Anderson*, the Eleventh Circuit also rejected the argument that § 203(o) was an "exemption" which should be narrowly construed against the employer.  *Anderson,* 488 F.3d at 956-57.  The Court stated that, "§ 203(o) is not an exemption under the FLSA but is instead a definition that limits the scope of the FLSA's key minimum wage and maximum hour provisions."  *Id*.  The Court reasoned that "construing § 203(o) narrowly against employers as an FLSA 'exemption' contravenes not only basic tenets of statutory construction but also the readily apparent intent of the legislators who approved the amendments language."  *Id*. at 958.  Based on this interpretation, Defendant argues that the Eleventh

Circuit's ruling extends beyond the time spent changing clothes at the beginning and end of the workday to include donning and doffing activities related to breaks as well. *See generally* Doc. 68. To support this argument, Defendant appears to rely exclusively on the fact that in *Anderson*, the Eleventh Circuit affirmed the granting of summary judgment by the lower court, which included the dismissal, without any discussion, of claims for compensation related to clothes changing for breaks. *Id*.

This Court, however, questions whether *Anderson* resolved the issue of break related donning and doffing. In its analysis, *Anderson* does not discuss potential differences between pre-shift clothes changing and midday break clothes changing. Further, the language of § 203(o) suggests that it may not apply to midday breaks. Section 203(o) states that "time spent in changing clothes or washing **at the beginning or end of each workday . . .**" can be excluded from compensation. 29 U.S.C. § 203(o) (emphasis added).

In addition, Defendant did not cite the Court to any authority, binding or otherwise, which clearly addresses the application of § 203(o) to breaks. While Defendant cited numerous Circuit Court and District Court opinions

addressing meal breaks, none of the cases clearly dispose of the issue by conducting § 203(o) analysis.  For example, while *Bejil v. Ethicon, Inc.*, 269 F.3d 477 (5th Cir. 2001) discussed midday meal breaks in a separate section, the Court did not consider the issue of midday donning and doffing under § 203(o) analysis.  *See Bejil*, 269 F.3d at 479-81.  Also, in *Hoover v. Wyandotte Chem. Corp.*, 455 F.2d 387 (5th Cir. 1972), *Arcadi v. Nestle Food Corp.*, 38 F.3d 672 (2nd Cir. 1994), and *Turner v. City of Phila.*, 262 F.3d 222 (3rd Cir. 2001), the Second, Third, and Fifth Circuits did not specifically address midday breaks in their analysis of § 203(o).  Likewise, none of the District Court opinions cited by Defendant discuss the application of § 203(o) to midday breaks.

This uncertainty was also not addressed by Plaintiffs, who failed to present any argument that the language of § 203(o) does not apply to donning and doffing activities that take place during breaks or at meal times.   Instead, Plaintiffs argue that the Eleventh Circuit improperly construed § 203(o) as a "definition" rather than an "exemption" or "exclusion."  *See* Doc. 81 at 18.  It appears that Plaintiffs would have this Court follow the Ninth Circuit's holding in *Alvarez*, rather than the Eleventh

Circuit's holding in *Anderson*.  *See* Doc 81 at 8.  Regardless of Plaintiffs' views of the Court's reasoning in *Anderson*, the Eleventh Circuit issued a published opinion directly on point with this argument.  That opinion is binding on this Court and Plaintiff's argument is therefore without merit.

Based on the aforementioned uncertainty, the Court does not feel that summary judgment is due to be granted as to the midday breaks at this point.  The Court will allow this issue to be included in the final summary judgment motion to be filed at the appropriate time.

VI.   Conclusion.

For the reasons stated above, Defendant's motion for partial summary judgment will be granted in part and denied in part.  The Court has set a Scheduling Conference for Thursday, February 7, 2008, at 10:00 a.m., to determine how the case will proceed.  A separate order will be entered in conformity with this opinion.

Done this 22nd day of January 2008.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
151277